STATE *ex rel.* JOHN A. FIELD, JR., *etc.*

*v.*

UNITED STATES STEEL CORPORATION

(No. 10924)

Submitted January 8, 1958. Decided March 11, 1958.

*W. W. Barron*, Attorney General, *Henry C. Bias, Jr.*, Assistant Attorney General, *Joseph E. Hodgson*, Assistant Attorney General, for plaintiff in error.

*Dayton, Campbell & Love, Ernest H. Gilbert, Charles M. Love*, for defendant in error.

PER CURIAM:

This is a notice of motion for judgment proceeding, instituted in the Circuit Court of McDowell County by the State of West Virginia ex rel. John A. Field, Jr., (formerly William R. Laird, III), State Tax Commissioner, to collect from the defendant, United States Steel Corporation, a corporation, additional business and occupation taxes in the amount of $34,397.34, allegedly due under the provisions of Article 13, Chapter 11, West Virginia Code, 1931, as amended, for the years 1949 through and including 1953. To the notice of motion for judgment the defendant filed a counter-affidavit, denying any sum was owed by it to the plaintiff; its special plea of the statute of limitations as to any tax or penalty allegedly due for the year 1949; and its plea of the general issue.

In the circuit court the plaintiff conceded that its claim for taxes and penalties for the year 1949 was barred by the statute of limitations, as pleaded by the defendant, and after making certain minor adjustments in the assessment upon which the notice was originally based, the plaintiff finally sought to recover from the defendant for the years 1950 to 1953, inclusive, the sum of $33,007.42.

This writ of error is prosecuted to an order of the Circuit Court of McDowell County, awarding judgment for the defendant, and dismissing plaintiff's notice of motion for judgment.

The defendant, United States Steel Corporation, a corporation, is engaged in the business of manufacturing steel, producing coal, and in allied and subsidiary activities; and is duly authorized to do business in the State of West Virginia, in which State it is principally engaged in the

production of coal for use in its steel mills, all of which are located outside the State of West Virginia. The other activities in which the defendant engages in West Virginia are not in relation to the production of coal, and are not involved in this proceeding.

All of the coal prepared and shipped from defendant's facilities for the preparation, loading and shipment of coal, which are located in McDowell County at and near the community of Gary, is mined within the State of West Virginia, with the exception of a small percentage of coal mined in the State of Virginia.

In the course of its business of producing, preparing and shipping coal in West Virginia, defendant used and consumed at its mines a part of the coal so mined, which part, though relatively a small percentage of the amount of the coal produced in West Virginia, had a value in excess of four hundred thousand dollars each year.

During the years 1951, 1952, and 1953 the coal consumed by the defendant corporation in the operation of its facilities in West Virginia, was used for the following purposes:

(1) The operation of a power plant at Gary for the manufacture of electricity, part of which was used to operate machinery in the mines, and part of which was sold to defendant's employees for domestic use in company mining towns, which towns were scattered for a distance of about seventeen miles in McDowell County; and a negligible part of the coal was sold as an accommodation to persons or organizations not directly employed by the defendant, such as, the Norfolk and Western Railway Company for the operation of its railroad station; and

(2) The drying of sand for use in mine haulage motors, and in the heating of various mine buildings, such as lamp houses, stables, repair shops, offices, coal cleaning plant and a community building.

The net tons and value of the coal mined and consumed as aforesaid by the defendant for the years 1951, 1952,

and 1953, the value of which was not reported for taxation purposes, and upon which no business and occupation tax was paid were as follows:

| Year | Tons | Value |
|------|------|-------|
| 1951 | 74,330 | $444,642.06 |
| 1952 | 66,491 | 407,124.39 |
| 1953 | 71,380 | 434,275.92. |

In addition to the production of coal in West Virginia, the defendant corporation in the years 1950 through 1953, engaged in the following activities:

(1)   Produced timber from lands owned and leased by the defendant, which timber was consumed by the defendant in the operation of its coal mines in West Virginia;

(2)   Processed the timber so produced into roof props, crossties, and rough lumber, which were also used and consumed by the defendant in the operation of its coal mines in West Virginia;

(3)   Operated at Gary a boarding and rooming house, called a clubhouse, for the use of its employees, although the facilities of such clubhouse were at times made available to nonemployees having business with the corporation at Gary, and, in some instances, to teachers in the public schools of Gary; and

(4)   Delivered house coal to its employees, which defendant sold to such employees in compliance with the terms of its wage agreement with District No. 17 of the United Mine Workers of America.

For the years 1951, 1952, and 1953, the defendant did not report or pay any business and occupation tax on any of the timber it produced, processed and used in its mines as hereinabove stated, the total wholesale value of the lumber manufactured from such timber for the years 1951, 1952, and 1953 being $399,245.36.

For the years 1951, 1952, and 1953, the defendant reported the receipts from the operation of its clubhouse, and paid the tax thereon under the retail classification

at the rate stipulated in Section 2c of Article 13, Chapter 11, Code, 1931, but it did not report or pay any tax on such income under the service classification at the rate provided by Section 2h of Article 13, Chapter 11, Code, 1931.

For the years 1950 to 1953, inclusive, the defendant did not report under any classification, and did not pay any business and occupation tax upon its receipts from delivery charges for household coal sold to its employees under the agreement with District No. 17 of the United Mine Workers of America. These delivery charges, of course, were separate and apart from the sales charges for this coal, and the total amount for the years in question of the delivery charges was $137,843.14.

The detailed figures as to the amount of coal produced by the defendant and the tax paid thereon, the value of the coal and timber produced and consumed in defendant's coal mining operation, the receipts from the operation of the clubhouse, and the delivery charges for coal sold to defendant's employees under the wage agreement are set forth in a stipulation of facts, and copies of tax returns attached thereto and made a part thereof. The amounts of taxes claimed by the plaintiff are fully set forth in the transcript of evidence, with the exception of a further adjustment consisting of the deduction of $79.27, agreed to by the parties to this cause as prepared at the time this case was argued before the Circuit Court of McDowell County. For the purpose of this case, however, and in order to avoid a repetition of all of such figures, the following summary of taxes and penalties claimed will suffice:

| Year | Tax | Penalty | Total |
|------|------|---------|-------|
| 1950 | $ 338.12 | $ 167.37 | $ 505.49 |
| 1951 | 8,664.22 | 3,349.08 | 11,913.30 |
| 1952 | 7,753.69 | 1,977.19 | 9,730.88 |
| 1953 | 9,636.14 | 1,300.88 | 10,937.02 |
| Grand total | 26,392.17 | 6,694.52 | 33,086.69 |
| Less adjustment | 59.80 | 19.47 | 79.27 |
| Balance | 26,332.37 | 6,675.05 | 33,007.42 |

According to the stipulation, the State Tax Commissioners since 1935, in the administration of the business and occupation tax law, have taken the position that the measure of the tax imposed by Section 2a on the business of producing coal is the value of the coal produced, including the value of any coal consumed in the operation of the mine; that since 1933 the measure of the tax imposed under Section 2a includes the value of timber produced and consumed in the production of coal or any natural resource; and that, where timber is manufactured into the lumber, the entire wholesale value of the lumber under Section 2b must be reported, and the tax paid thereon. It is further stipulated that the State Tax Commissioners have taken the position since 1933 that any person engaged primarily in the business of producing coal and also engaged in a sub-activity, such as the operation of a boarding and rooming house, and the sale and delivery of coal at retail, must report receipts from and pay tax for the privilege of engaging in such sub-activities in the service and selling classifications of the tax law rather than in the classification of the principal business.

The stipulation further shows that in 1950 defendant's business of coal production in West Virginia was carried on by its subsidiary, United States Coal & Coke Company, a corporation, which at the end of that year was merged with another subsidiary of defendant, United States Steel Company, a corporation, which conducted the business in the years 1951 and 1952. At the end of 1952 the last-mentioned subsidiary was merged with the defendant, United States Steel Corporation, which has engaged in the business from that date until the present time.

The pertinent provisions of the statute read as follows:

> "(1) 'Business', as used in this article, shall include all activities engaged in or caused to be engaged in with the object of gain or economic benefit either direct or indirect. The production of raw materials or manufactured products, which are used or consumed in the main business, shall

be deemed business engaged in taxable in the class in which it falls." Chapter 33, Acts of the Legislature, Extraordinary Session, 1933, Section 1. (Michie's Code, 1949, 11-13-1).

\* \* \*

"(2) There is hereby levied and shall be collected annual privilege taxes against the persons, on account of the business and other activities, and in the amounts to be determined by the application of rates against values or gross income as set forth in sections two-(a) to two-(i) inclusive of this article.

\* \* \*

"A person exercising privileges taxable under the other sections of this article, producing coal, oil, natural gas, minerals, timber or other natural resource products the production of which is taxable under section two-(a), and using or consuming the same in his business, shall be deemed to be engaged in the business of mining and producing coal, oil, natural gas, minerals, timber or other natural resource products for sale, profit or commercial use, and shall be required to make returns on account of the production of the business showing the gross proceeds or equivalent in accordance with uniform and equitable rules for determining the value upon which such privilege tax shall be levied, corresponding as nearly as possible to the gross proceeds from the sale of similar products of like quality or character by other taxpayers, which rules the tax commissioner shall prescribe." Chapter 86, Acts of the Legislature, Regular Session, 1935, Section 2. (Michie's Code, 1949, 11-13-2).

"(2a) Upon every person engaging or continuing within this State in the business of producing for sale, profit, or commercial use any natural resource products, the amount of such tax to be equal to the value of the articles produced as shown by the gross proceeds derived from the sale thereof by the producer, except as hereinafter provided, multiplied by the respective rates as follows: Coal, one per cent; \* \* \* timber, one and one-half per cent; \* \* \*. The measure of this tax is the value of the entire production in this State, regardless of the place of sale or the fact that delivery may be made to points outside the State." Chapter 86, Acts of the Legislature, Regu-

lar Session, 1935, Section 2-(a). (Michie's Code, 1949, 11-13-2a).

"(2h) Upon every person engaging or continuing within this State in any service business or calling not otherwise specifically taxed under this law, * * * there is likewise hereby levied and shall be collected a tax equal to one per cent of the gross income of any such business." Chapter 86, Acts of the Legislature, Regular Session, 1935, Section 2-(h). (Michie's Code, 1949, 11-13-2h).

Judges Browning and Riley would reverse in part and affirm in part the judgment of the Circuit Court of McDowell County, as follows:

As Sections 1, 2, 2a, and 2h of West Virginia Code, 1931, Chapter 11, Article 13, as amended, for the years 1949 and through the year 1953, relate to the same subject matter, namely, the levying and collecting of business and occupation taxes, these sections should be read together as if they formed a part of the same statute and were enacted at the same time. *Hays, Admr.* v. *Harris,* 73 W. Va. 17, 80 S. E. 827; *State* v. *Reed,* 107 W. Va. 563, 149 S. E. 669; *State* v. *Hoult,* 113 W. Va. 587, 169 S. E. 241; and *White* v. *Morton,* 114 W. Va. 29, 171 S. E. 762. These sections, when read together being clear and unambiguous and evincing the legislative intent, should be applied and not construed.

In Point 3 of the Syllabus to *State* v. *Patachas,* 96 W. Va. 203, 122 S. E. 545, this Court held: "Where the language of a statute is free from ambiguity and the intent is plain, there is no occasion for interpretation by a court. 'It is not allowable to interpret what has no need of interpretation.' " See also *State* v. *Conley,* 118 W. Va. 508, 190 S. E. 908; *State ex rel. McLaughlin* v. *Morris,* 128 W. Va. 456, 37 S. E. 2d 85; *State ex rel. Department of Unemployment Compensation* v. *Continental Casualty Co.,* 130 W. Va. 147, 42 S. E. 2d 820; *Hereford* v. *Meek,* 132 W. Va. 373, 52 S. E. 2d 740; *State* v. *Epperly,* 135 W. Va. 877, 65 S. E. 2d 488; and *Douglass* v. *Koontz,* 137 W. Va. 345, 71 S. E. 2d 319.

It is to be noted that Section 1 of the statute provides that: " 'Business', as used in this article, shall include *all activities* engaged in or caused to be engaged in with the object of gain or economic benefit *either direct or indirect."* (Italics supplied). And more specifically Section 1 provides that: "* * * The production of raw materials or manufactured products, *which are used or consumed in the main business, shall be deemed* business engaged in taxable in the class in which it falls. * * *." (Italics supplied).

Basing their holding upon the clear and unambiguous provisions of the last-quoted portion of the statute, Judges Browning and Riley are of the opinion that all of the activities of the defendant are taxable, including the value of the coal consumed by defendant corporation in the operation of its facilities in West Virginia during the years 1951, 1952 and 1953; in the production or processing of timber during the years 1950 to and including 1953; and in the operation at Gary of its boarding and rooming house, designated in this record as the "clubhouse", which was used by defendant's employees and made available to nonemployees having business with the defendant corporation at Gary, and, in some instances, to teachers in the public schools of Gary. In so holding, Judges Browning and Riley *ex necessitate* hold that the cases of *Appalachian Electric Power Co.* v. *Koontz,* 138 W. Va. 84, 76 S. E. 2d 863, and *Soto* v. *Hope Natural Gas Co.,* 142 W. Va. 373, 95 S. E. 2d 769, are not determinative of the issues in this case.

The record discloses, however, that the defendant's alleged tax liability up to and during the trial of this case in the Circuit Court of McDowell County was fluid and subject to adjustment, in which circuit court, by agreement of counsel, adjustments were made in the amount of tax sought to be recovered. For this reason the authority of the State Tax Commissioner to impose penalties under West Virginia Code, 1931, Chapter 11, Article 13, Section 2e, does not exist. See *Dravo Construction Co.* v. *James,* 114 F. 2d 242, decided by the United States Circuit Court

of Appeals for the Fourth Circuit, in which certiorari was denied by the Supreme Court of the United States in 312 U. S. 678. The imposing of penalties in the enforcement of revenue acts is indeed a harsh method of enforcement, and, in view of the defendant's evident good faith in withholding the tax claimed by the State Tax Commissioner, the judgment of the Circuit Court of McDowell County, to the extent that it refused to impose the penalties claimed, in the opinion of Judges Browning and Riley should be affirmed *pro. tanto*.

Judge Given would reverse the judgment of the Circuit Court of McDowell County only insofar as it denies the State the right to assess a tax against the business of operating the "boarding and rooming house". He is of the opinion that that business is separate and distinct from the business of the coal mining operation, and that though it may be a convenient and useful adjunct business, and even necessary to the successful financial operation of the coal mining operation, it is, in fact, not a part of the coal mining operation. He is of the further opinion that the activities of the defendant in supplying timber materials necessary for, and used only in, the operation of the coal mining business, the coal used for manufacture of electricity used in the coal mining operation, and the coal delivered to the employees of defendant as fringe benefits, constitute parts of the coal mining operation, as conducted by the defendant.

Judge Ducker would affirm *in toto* the judgment of the Circuit Court of McDowell County, as he is of the opinion that the activities of the defendant in producing or supplying timber materials necessary for, and used only in, the operation of the coal mining business, and coal used for the generation of electricity necessary for the coal mining operation or sold to those engaged in the work of the defendant in producing and selling coal are parts of the cost structure of defendant's operation, as is also the operation of the clubhouse which is in this instance and almost universally in this area considered a necessary and integral part of the coal mining operation; and that the purpose of

the statute is the taxation of production and sale of coal and all the foregoing aspects are necessary incidents thereof, not separate and distinct businesses, and the value of or the income therefrom is exempt as not within the meaning or purpose of the statute.

Judge Haymond, being disqualified, did not participate in the decision or the opinion in this case.

As Judges Browning and Riley would reverse the judgment of the circuit court *in toto,* except as to penalties; Judge Given would affirm the judgment *in toto,* except so far, and so far only, as it denies tax liability on the clubhouse; and Judge Ducker would affirm *in toto,* this Court reverses the judgment of the Circuit Court of McDowell County, in so far, and in so far only, as it denies tax liability on the clubhouse, and in all other respects affirms the judgment of the Circuit Court of McDowell County; and remands this case to the Circuit Court of McDowell County for further proceedings not inconsistent with the principles set forth in this opinion.

> *Reversed in part;*
> *affirmed in part;*
> *remanded for further*
> *proceedings*