J. D. MOORE, INC.

*v.*

C. HOWARD HARDESTY, JR., *State Tax Commissioner*
*and*
STATE *ex rel.* C. HOWARD HARDESTY, JR.,

*State Tax Commissioner*

*v.*

J. D. MOORE, INC.

(No. 12186)

Submitted January 29, 1963.     Decided February 26, 1963.

612

*Peters, Merricks, Leslie, Kenna & Mohler, Lee M. Kenna,* for appellant.

*C. Donald Robertson,* Attorney General, *Edward B. Simms,* Assistant Attorney General, for appellee.

HAYMOND, JUDGE:

The question involved in these consolidated proceedings is whether, under the provisions of Chapter 11,. Article 13, Code, 1931, as amended, known as the business and occupation tax statute, a taxpayer engaged in an integrated business of selling motor trucks and machinery at wholesale and of selling at retail repaired and serviced motor vehicles, accepted as a credit upon the purchase price of such motor trucks and machinery, and of maintaining a service department in which some motor vehicles which are not sold in the business are repaired and serviced, and in which 81.9 percent of the gross income of its business is derived from wholesale sales, 8.6 percent of the gross income of its business is derived from retail sales, and 9.5 percent of the gross income of its business is derived from service, shall be taxed as to all the activities of such business, as a taxpayer engaged entirely in the sale of property by wholesale, or as a taxpayer engaged in the separate activities of the sale of property by wholesale and by retail and of rendering service upon articles not included in the wholesale or the retail sales of property.

After an audit in 1957, at the instance of the state tax commissioner, herein sometimes referred to as the plaintiff, of the books of the taxpayer, J. D. Moore, Inc., herein sometimes referred to as the defendant, the state tax commissioner on March 10, 1958, levied a deficiency assessment

against the defendant of $1,785.01, additional taxes which had accrued during the period August 1, 1953 to December 31, 1956, and a penalty of $615.01, aggregating $2,400.02. That assessment was based upon the allocation of 81.9 percent of the gross income of the business of the defendant to its wholesale sales, 8.6 percent of its gross income to its retail sales, and 9.5 percent of its gross income to its service.

The defendant petitioned for a reassessment of the tax and a refund on the ground that its business activities were predominantly wholesale in character; that the retail sales and the service activities of its integrated wholesale sales business were merely incidental to such business; and that its entire business should be assessed at the rate levied upon a wholesale sales business. On January 16, 1959 the state tax commissioner denied the petition for a reassessment but waived the penalty, and by letter dated January 27, 1959 to the attorney for the defendant refused any refund. On February 27, 1959 the defendant filed its appeal in the Circuit Court of Kanawha County and, after the appeal was filed, the plaintiff instituted a declaratory judgment proceeding in that court on June 10, 1960. These proceedings were consolidated by order entered November 22, 1960 and by final judgment rendered October 26, 1961 the circuit court affirmed the action of the state tax commissioner in levying the deficiency assessment and in waiving the penalty originally imposed and in refusing defendant's claim for a refund. From that judgment this Court granted this appeal and supersedeas on July 2, 1962 upon the petition of the defendant.

The principal error assigned by the defendant is the action of the circuit court in holding that a single integrated business may be separated by the state tax commissioner into component parts for the purpose of taxation under the several applicable sections of the business and occupation tax statute, which are Sections 1, 2 and 2c, Chapter 165, Acts of the Legislature, 1955, Regular Session, and Section 2h, Chapter 86, Acts of the Legislature, 1935, Regular Session, the statute in effect during the period of the accrual of the taxes involved in these consolidated proceedings, and being

Sections 1, 2, 2c and 2h, Article 13, Chapter 11, Code, 1931, as amended by those Acts of the Legislature.

The material facts are not disputed and the question for decision is a question of law.

Before the inception of this controversy the defendant customarily reported that 88 percent of its gross income was derived from its sales at wholesale and that 12 percent of its gross income was derived from its sales at retail. It does not appear that it reported that any of its gross income was derived from any service rendered by it in its integrated business.

Section 1, Article 13, Chapter 11, Code, 1931, as amended by Chapter 165, Acts of the Legislature, 1955, Regular Session, the statute in effect when the foregoing taxes accrued, contained, among others, these pertinent provisions: " 'Sale', 'sales' or 'selling' includes any transfer of the ownership of, or title to, property, whether for money or in exchange for other property."; " 'Gross income' means the gross receipts of the taxpayer received as compensation for personal services and the gross receipts of the taxpayer derived from trade, business, commerce or sales and the value proceeding or accruing from the sale of tangible property (real or personal), or service, or both, * * * ."; " 'Business' shall include all activities engaged in or caused to be engaged in with the object of gain or economic benefit, either direct or indirect. * * * ."; " 'Service business or calling' shall include all nonprofessional activities engaged in for other persons for a consideration, which involve the rendering of a service as distinguished from the sale of tangible property, but shall not include the services rendered by an employee to his employer. * * * ."; " 'Selling at wholesale' or 'wholesale sales' shall mean and include: (1) Sales of any tangible personal property for the purpose of resale in the form of tangible personal property; (2) sales of machinery, supplies or materials which are to be directly consumed or used by the purchaser in the conduct of any business or activity which is subject to the tax imposed by this article or by article twelve-a of this chapter; (3) sales of any tangible personal property to the United States of America, its agen-

cies and instrumentalities or to the state of West Virginia, its institutions or political subdivisions."

Section 2 of the same article and chapter, as amended by Chapter 165, Acts of the Legislature, 1955, Regular Session, in effect when the foregoing taxes accrued, to the extent here pertinent, contained these provisions: "There is hereby levied and shall be collected annual privilege taxes against the persons, on account of the business and other activities, and in the amounts to be determined by the application of rates against values or gross income as set forth in sections two-a to two-j, inclusive, of this article."

Section 2c of the same article and chapter, as amended by Chapter 165, Acts of the Legislature, 1955, Regular Session, in effect when the foregoing taxes accrued, provided: "Upon every person engaging or continuing within this State in the business or selling any tangible property whatsoever, real or personal, including the sale of food, and the services incident to the sale of food in hotels, restaurants, cafeterias, confectioneries, and other public eating houses, except sales by any person engaging or continuing in the business of horticulture, agriculture or grazing, or of selling stocks, bonds or other evidences of indebtedness, there is likewise hereby levied, and shall be collected, a tax equivalent to one-half of one per cent of the gross income of the business, except that in the business of selling at wholesale the tax shall be equal to fifteen one-hundredths of one per cent of the gross income of the business."

Section 2h, Chapter 86, Acts of the Legislature, 1935, Regular Session, in effect when the foregoing taxes accrued, contained this language: "Upon every person engaging or continuing within this state in any service business or calling not otherwise specifically taxed under this act, there is likewise hereby levied and shall be collected a tax equal to one per cent of the gross income of any such business."

The foregoing statutory provisions which apply to and govern the tax liability of the defendant during the period August 1, 1953 to December 31, 1956, are plain and free from ambiguity and will not be interpreted but instead will be

enforced by the court. See *State ex rel. Field* v. *United States Steel Corporation,* 143 W. Va. 375, 102 S. E. 2d 354; *Appalachian Electric Power Company* v. *Koontz,* 138 W. Va. 84, 76 S. E. 2d 863; *Douglass* v. *Koontz,* 137 W. Va. 345, 71 S. E. 2d 319. Since there is no ambiguity in the applicable statutory provisions, the cases of *In Re Glessner's Estate* v. *Carman,* 146 W. Va. 282, 118 S. E. 2d 873; *State ex rel. Lambert* v. *Carman,* 145 W. Va. 635, 116 S. E. 2d 265, and *Fry* v. *Ronceverte,* 93 W. Va. 388, 117 S. E. 140, cited by the defendant, which hold that statutes imposing a tax are strictly construed and that where there is a doubt as to the meaning of such statutes they are construed in favor of the taxpayer and against the State, have no application to the statutory provisions involved in the instant proceedings. This Court has held in many cases that when a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the court and that in such case it is the duty of the court not to construe but to apply the statue. *Terry* v. *State Compensation Commissioner,* 147 W. Va. 529, 129 S. E. 2d 529, and the numerous cases cited in the opinion in that case.

Under the provisions of the business and occupation tax statute in effect when the taxes involved in these proceedings accrued during the period August 1, 1953, to December 31, 1956, the taxpayer, engaged in an integrated business which is predominantly wholesale in character in which 81.9 percent of its gross income is derived from wholesale sales of motor trucks and equipment, is subject to the tax imposed by Section 2c of that statute at the rate of fifteen one-hundredths of one percent on 81.9 percent of its gross income; in which 8.6 percent of its gross income is derived from retail sales of motor vehicles is subject to the tax imposed by Section 2c of that statute at the rate of one-half of one percent on 8.6 percent of its gross income; and in which 9.5 percent of its gross income is derived from service, which is not taxable under any other statutory provisions, is subject to the tax imposed by Section 2h of that statute at the rate of one percent on 9.5 percent of its gross income.

The defendant cites and relies upon the recent cases of *Appalachian Electric Power Company* v. *Koontz*, 138 W. Va. 84, 77 S. E. 2d 863; and *State ex rel. Field* v. *United States Steel Corporation*, 143 W. Va. 375, 102 S. E. 2d 354, in support of its contention that under the business and occupation tax statute imposing a tax upon the privilege of engaging in the business of selling at wholesale the income from activities necessary and incidental to such business is a part of the gross income of the business and is not to be taxed separately. Those cases are readily distinguishable from the instant proceedings and in consequence they do not apply to or control the present decision.

In the *Appalachian Electric Power Company* case the statute under consideration, Section 2d of the business and occupation tax statute, related to a public service or utility business and imposed a specified tax upon the gross income received from its sales and demand charges, and this Court held that the income derived from an activity or business purely incidental to and in furtherance of the public service business is not a part of the income included within sales and demand charges and is not included in the base for determining the tax levied by that section of the statute. In *State ex rel. Field* v. *United States Steel Corporation*, 143 W. Va. 375, 102 S. E. 2d 354, the principal section of the business and occupation tax statute involved in the decision was Section 2a, which applies to a taxpayer engaging in the business of producing for sale, profit or commercial use natural resource products in which are included coal and timber. The taxpayer, United States Steel Corporation, during a designated period of time produced a large quantity of coal and a large quantity of timber, which it consumed in the operation of its coal mines in this State. It delivered and sold to its employees, under the terms of its wage agreement with the union, coal for the houses occupied by them, and it also operated a boarding and rooming clubhouse for the use of its employees. The trial court dismissed the claim of the State for taxes on those activities of the defendant. Upon appeal this Court, one judge having disqualified himself, being evenly divided as to all the foregoing activities

except the clubhouse, affirmed the trial court in holding that the coal and the timber consumed in the operation of the mines of the defendant and the coal delivered to its employes constituted parts of the coal mining operation and were not subject to a separate or additional tax but that as to the clubhouse, three judges being of the opinion that it was a separate and distinct taxable activity, reversed the judgment of the circuit court and held the clubhouse activity to be taxable under the statute. In neither of the foregoing cases, however, was the application of the provisions of the statute relating to wholesale and retail sales or to service considered or determined.

The judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*