OWENS-ILLINOIS GLASS COMPANY, *et al.*

*v.*

G. THOMAS BATTLE, *State Tax Commissioner, etc.*

(No. 12616)

Submitted May 2, 1967.      Decided June 6, 1967.

656

*Stone, Mauzy, Bowles & Kauffelt, T. D. Kauffelt,
A. G. Stone,* for appellants.

*C. Donald Robertson,* Attorney General, *James G.
Anderson, III,* Assistant Attorney General, for appellee.

CALHOUN, PRESIDENT:

This case, on appeal from the Circuit Court of Kanawha County, involves a declaratory judgment proceeding in which that court upheld the action of the State Tax Commissioner in refusing a claim for refund of certain business and occupation taxes for 1955, 1956 and 1957 which had been paid by Owens-Illinois Glass Company, a corporation, and Libbey-Owens-Ford Glass Company, a corporation, which corporations may be referred to hereafter in this opinion merely as the taxpayers.

During the tax years in question, the two taxpayers severally operated manufacturing plants in Kanawha and Cabell Counties. During that period of time, they were engaged jointly in the production of natural gas

for use in the operation of their respective manufacturing plants. The taxes of which they seek a refund are a portion of the total business and occupation taxes paid by them in connection with their joint activity in the production of natural gas.

In the circuit court, the case was submitted for decision upon a stipulation of all pertinent facts. In this Court, the case has been submitted for decision on the record made in the circuit court, including the stipulation of all material facts, and upon briefs and oral argument of counsel. The basic question for decision is whether, under applicable statutory provisions, the taxes were properly collected and paid.

All the natural gas produced jointly by the taxpayers was used and consumed by them in the operation of their respective manufacturing plants, except a relatively small portion of such gas which was used and consumed in the operation of the gas production facilities, especially in the operation of compressor plants and equipment which were necessary in the extraction of the gas from the producing sands and wells. The taxpayers, for the tax years in question, paid taxes on the basis of the total volume of gas jointly produced by them. The taxes for which a refund is sought in this case, amounting to $3,134.85, represent the portion of taxes which were paid on the volume of the gas which was used and consumed in the process of producing gas and which, therefore, was not used and consumed in the operation of the manufacturing plants.

The business and occupation tax and the rates thereof are established by the provisions of Article 13 of Chapter 11, Code, 1931, as amended. Statutes relating to the same subject, regardless of the time of their enactment and whether the later statute refers to the former statute, are to be read and construed together and considered as a single statute the parts of which had been enacted at the same time. *Delardas v. Morgantown Water Commission,* 148 W. Va. 776, pt. 1 syl.,

137 S. E. 2d 426; *The Chesapeake and Potomac Telephone Co. of West Virginia v. The City of Morgantown,* 144 W. Va. 149, pt. 4 syl., 107 S. E. 2d 489. This legal principle is applicable to the provisions of Article 13 referred to above.

The history of the business and occupation statutes was traced and the character of the tax was defined in *Soto, Tax Commissioner v. Hope Natural Gas Co.,* 142 W. Va. 373, 95 S. E. 2d 769. In that case, the Court pointed out that a business and occupation tax levied upon the production of natural gas or other natural products is a privilege tax, not a "production tax" or a "severance tax" in the sense of a tax levied on "each ton of coal, each barrel of oil, or each m.c.f. of gas" produced. To the same effect see *Cole v. Pond Fork Oil & Gas Co.,* 127 W. Va. 762, 776, 35 S. E. 2d 25, 32, 160 A.L.R. 970. In the *Soto* case, the Court stated in the second point of the syllabus that the measure of the tax upon the privilege of producing for sale, profit or commercial use any natural resource product "is the value of the article produced" at the point where production ends.

In *J. D. Moore, Inc. v. Hardesty, State Tax Commissioner,* 147 W. Va. 611, 129 S. E. 2d 722, the Court held that a single integrated business may be separated by the state tax commissioner into its component parts for purposes of taxation at different rates under the several applicable sections of the business and occupation tax statutes. It is not questioned in this case, therefore, that the state tax commissioner has properly levied a tax at the rate prescribed by Section 2b of Article 13 as to the taxpayers' manufacturing businesses and a tax at the rate prescribed by Section 2a of Article 13 as to the taxpayers' joint business of producing natural gas which was used and consumed in the operation of their manufacturing plants.

In further consideration of the provisions of the business and occupation tax statutes, we will refer hereafter in this opinion merely to the several sections

of Article 13 of Chapter 11, Code, 1931, as amended. Section 1 defines words and terms used in the statute. In defining the businesses covered by the tax, Section 1 provides: " 'Business' shall include *all* activities engaged in or caused to be engaged in with the object of gain or economic benefit, either direct or indirect. * * *." (Italics supplied.) We note here that the language defining businesses which are taxed contains no qualification or exception. No express qualification or exception in relation to that embracive language is found in any other provision of Article 13.

Section 2 contains the provisions which impose the tax. This is the section which is directly involved in determining the propriety of the taxes in question in this case. This section, therefore, will be considered at greater length subsequently in this opinion.

Section 2a fixes the rate of taxation upon the "business of producing for sale, profit or commercial use any natural resource products, the amount of such tax to be equal to the value of the articles produced as shown by the gross proceeds derived from the sale thereof by the producer, except as otherwise provided, * * *."

Section 2b deals with manufacturing, compounding or preparing any article or articles for sale, profit or commercial use and fixes the rate of taxes for businesses in that category.

Sections 2c and through 2j define other categories of businesses and specify the several rates of taxation in relation to such several categories. We believe no provisions of Article 13 which follow Section 2b are directly involved in a proper decision of this case.

Section 2 is the only portion of Article 13 which provides for the imposition of a tax. The first paragraph of that section is as follows: "There is hereby levied and shall be collected annual privilege taxes against the persons, on account of the business and other activities, and in the amounts to be determined

by the application of rates against *values or gross income* as set forth in sections two-a to two-j, inclusive, of this article." (Italics supplied.) Notwithstanding the fact that Section 2 is the only part of Article 13 which imposes a tax, the fifth paragraph of that section contains the following language: "A person exercising any privilege *taxable* under sections two-a or two-b of this article * * * shall * * * pay the tax *imposed* in section two-c of this article * * *." (Italics supplied.) The same paragraph refers to "any privilege *taxable* under sections two-a or two-b of this article * * *." (Italics supplied.) The word "taxable" is similarly used in the sixth paragraph of Section 2. It is obvious that the word "taxable" as used in the language referred to has reference to the rate of taxation, because the other sections referred to in that connection do not purport to impose a tax, but rather they merely fix the rate of the tax which is imposed by Section 2. Counsel for the taxpayers agree that the statutory language is "inexact as it is undisputed that the tax is imposed by Section 2."

A recognition of this obvious meaning of the word "taxable", as used in the language referred to above, is helpful in understanding the meaning of that word as used in subsequent language of Section 2 which forms the basis of the taxpayers' contention in this case. That language is in the beginning portion of the seventh paragraph of Section 2, and is as follows: "A person exercising privileges *taxable* under the other sections of this article, producing coal, oil, natural gas, minerals, timber or other natural resource products the production of which is *taxable* under section two-a, and using or consuming the same in his business, shall be deemed to be engaged in the business of mining and producing coal, oil, natural gas, minerals, timber or other natural resource products for sale, profit or commercial use, and shall be required to make returns on account of the production of the business showing the gross proceeds or equivalent * * *, *corresponding as nearly as possible to the gross*

*proceeds from the sale of similar products* of like quality or character by other taxpayers, * * *." (Italics supplied.)

It is obvious that the purpose of the seventh paragraph of Section 2 which is quoted immediately above, as applied to the facts of this case, is to require the taxpayers to pay a tax, at the rate prescribed by Section 2a, on natural gas produced by them and used and consumed in the operation of their manufacturing plants. Counsel for the taxpayers agree that this is the clear intent and purpose of the language in question.

The contention of counsel for the taxpayers is based primarily on the italicized portion of the following language in the seventh paragraph of Section 2: "A person exercising privileges *taxable under the other sections of this article,* producing * * * natural gas, * * *, the production of which is taxable under section two-a, and using or consuming the same in his business, * * *." The brief of counsel for the taxpayers states that Section 2a, which fixes the rate of the tax on the business of producing natural resources, "clearly does not impose the tax on the particular gas under consideration in this proceeding as the rates therein are made applicable only to gas sold and the gross proceeds derived from that sale, except as otherwise provided. * * *." As we have stated previously, Section 2a does not purport to "impose" a tax.

Section 2a contains the following language: "Upon every person engaging or continuing within this State in the business of producing *for sale, profit or commercial use* any natural resource products, the amount of such tax to be equal to the value of the articles produced as shown *by the gross proceeds derived from the sale thereof* by the producer, *except as otherwise provided,* * * *. The measure of this tax is *the value of the entire production in this State,* regardless of the place of sale or the fact that the delivery may be made to points outside the State." (Italics supplied.) This section provides that the tax shall be computed on

the value of the articles produced "as shown by the gross proceeds derived from the sale thereof", because that section relates to natural resource products produced for sale. But in specifying the gross sale price as a basis for determination of the "value of the articles produced," the statute qualifies such provision by use of the words, "except as otherwise provided". We do not find anywhere in Article 13 any provision to which this exception could have reference except the language in the seventh paragraph of Section 2. That is the only other reference we find in Article 13 to a basis for computing a tax on production of natural resource products.

Inasmuch as natural resource products used or consumed, for instance, in the business of manufacturing are not sold by the producer, and inasmuch as producers of that character are not engaged in production of natural resource products for sale, the legislature, by the seventh paragraph of Section 2, clearly undertook to provide for taxation of such natural resource products used and consumed by the producer in another business conducted by him. Since such products are used and consumed in another business of the producer and, therefore, not sold by the producer, there was a need for a legislative determination of the value of such products for the purpose of computing the tax. The legislature, therefore, provided, in the seventh paragraph of Section 2, that such producer "shall be deemed to be engaged in the business of mining and producing coal, oil, natural gas, minerals, timber or other natural resource products *for sale,* profit or commercial use, and shall be required to make returns on account of the production of the business showing *the gross proceeds or equivalent* in accordance with uniform and equitable rules for determining the value upon which such privilege tax shall be levied, *corresponding as nearly as possible to the gross proceeds from the sale* of similar products of like quality or character by other taxpayers, * * *." (Italics supplied.)

Counsel for the taxpayers contend that the words, "A person exercising privileges taxable under the other sections of this article," in the seventh paragraph of Section 2, refer only to natural resource products used in businesses falling in the categories defined in Sections 2b through 2j and not to the business of producing natural gas products in the category and at the rates defined in Section 2a. In this connection, counsel rely on the words, "taxable under the other sections of this article," and construe these words to refer to sections other than Section 2a, and conclude that none of such other sections (Sections 2b through 2j) provides for a tax or a rate of tax on the production of natural resources. Counsel contend further that the language of the seventh paragraph of Section 2 does not impose a tax on the production of natural gas used in the process of producing additional natural gas; and that, therefore, Article 13 nowhere provides for a tax on the production of natural gas which is used and consumed in the further production of natural gas.

We are unable to perceive the force of this contention of counsel for the taxpayers. We believe that the statutory language, "A person exercising privileges taxable under the other sections of this article, producing * * * natural gas, * * * the production of which is taxable under section two-a, and using or consuming the same in his business," as such language relates to this case, clearly provides that these taxpayers, which are engaged primarily in the business of manufacturing products, must pay a tax at the rate prescribed by Section 2a, based on the gross volume of gas produced by them for the purpose of facilitating and promoting the operation of their manufacturing plants.

Article 13, when considered in its entirety, discloses a clear and unmistakable legislative intent to impose the tax on the basis of "gross income," "gross proceeds of sales" and gross production. Counsel for the taxpayers do not contend that any language of

664

Article 13 expressly exempts from taxation that portion of the gas which was used and consumed in the production of additional gas. As we understand the contention, it is, in effect, that the legislature failed expressly to impose a tax on gas in that category. We cannot find a tenable basis for that contention. Where a person claims an exemption from a law imposing a tax, such law is strictly construed against the one claiming such exemption. *State ex rel. Hardesty v. Aracoma-Chief Logan No. 4523, Veterans of Foreign Wars,* 147 W. Va. 645, pt. 2 syl., 129 S .E. 2d 921; *In Re: Hillcrest Memorial Gardens, Inc.,* 146 W. Va. 337, 342-43, 119 S. E. 2d 753, 756.

Counsel for the taxpayers cite and rely upon *State ex rel. Field v. United States Steel Corp.,* 143 W. Va. 375, 102 S. E. 2d 354. In that case, the trial court held against the contention of the state tax commissioner in a factual situation somewhat analogous to that involved in the instant case. We do not consider that case a binding precedent or even helpful in the decision of the present case for two reasons: First, only four of the members of the Court were involved in the opinion, one judge being disqualified. The decision of the trial court was affirmed merely on the basis of a two-two division among the judges who participated. Article VIII, Section 4 of the Constitution of West Virginia and Code, 1931, 58-5-20, provide that no decision by this Court shall be considered as binding authority upon any of the inferior courts of this state, except in the particular case decided, unless such decision is concurred in by at least three judges of the Court. And, second, that case involved taxes for tax years preceding the amendment of Article 13 by Chapter 165, Acts of the Legislature, Regular Session, 1955. Prior to the 1955 amendment, Section 1 of Article 13, contained the following language: "* * * The production of raw materials or manufactured products, which are used or consumed in the *main business,* shall be deemed business engaged in taxable in the class in which it falls." (Italics supplied.) By the

1955 amendment, there was substituted the following language which is presently in the statute: "* * * 'Business' shall include the production of natural resources or manufactured products which are used or consumed *by the producer or manufacturer.*" (Italics supplied.)

In *J. D. Moore, Inc. v. Hardesty, State Tax Commissioner,* 147 W. Va. 611, 129 S. E. 2d 722, the Court had under consideration Sections 1, 2 and 2c of Article 13. In that case, the Court held that the statutory provisions in question were "plain and free from ambiguity and will not be interpreted but instead will be enforced by the court." We believe that the provisions of Article 13 must be considered *in pari materia* and that, when so considered, such provisions, as they relate to this case, are clear and unambiguous and, therefore, must be applied in accordance with the legislative intent therein clearly expressed. *Dunlap v. State Compensation Director,* 149 W. Va. 266, pt. 1 syl., 140 S. E. 2d 448.

For reasons stated in this opinion, the judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*