BISHOP COAL CO.

*v.*

RICHARD L. DAILEY,

TAX COMMISSIONER, *etc.*

(No. 14971)

Decided March 17, 1981.

*Jackson, Kelly, Holt & O'Farrell, Thomas N. Chambers, James R. Synder and Louis S. Southworth, II,* for appellant.

*Chauncy H. Browning,* Attorney General, *Robert P. Howell,* Assistant Attorney General, for appellee.

NEELY, JUSTICE:

During the audit years in question, 1968 through 1972, the appellant operated a coal mine which straddled the Virginia-West Virginia border. This appeal concerns the proper measure of the business and occupation tax to be levied upon coal severed in Virginia and transported to the mine's processing plant located in West Virginia. Pursuant to Business and Occupation Tax Regulation 6.57(c) the appellant taxpayer reported that portion of its integrated, interstate activities occurring in West Virginia in the manufacturing category, *W. Va. Code,* 11-13-2b [1967, 1971]. There is no question that because the coal was not "severed" in West Virginia that manufacturing is the proper category rather than mining; however, the appellant maintains that "manufacturing" begins at the moment of severance, and accordingly, appellant apportioned the gross receipts from the sale of the coal severed in Virginia and run through the processing plant in West Virginia to reflect only the alleged value added by activities conducted in West Virginia.

The State Tax Commissioner assessed $166,893.67 additional tax against the appellant on the theory that the appellant's activities in West Virginia constituted the manufacture of high-grade, metallurgical coal while its activities in Virginia constituted mining coal. After full hearing the Tax Commissioner reaffirmed his initial ruling that appellant is liable for the tax on manufacturing as measured by the full value of the coal without any

apportionment attributable to Virginia activities. The appellant appealed to the Circuit Court of McDowell County, which affirmed the Tax Commissioner. Although the appellant has made numerous constitutional arguments based upon both the Commerce Clause and the Due Process Clause of the *Constitution of the United States*, the primary issue in this case is factual and not legal.

The appellant maintains that the manufacture of coal (as opposed to its mining) is an integrated process which begins at the mine face and continues through the transportation process in the mine tunnel located in Virginia and finally culminates at the cleaning plant and tipple in West Virginia. Under this theory of the industrial process, the appellant maintains that it is entitled to use the formula found in *Code*, 11-13-2b [1967, 1971] which applies to products partially manufactured inside West Virginia and partially manufactured outside of West Virginia. Obviously the application of this formula results in a significant reduction in tax.

The appellant makes great moment of the fact that during the entire transportation process of the coal inside the mine tunnels there is a constant effort to reduce the size of the coal to make it a marketable commodity. The record amply demonstrates that while the method of transportation inside the mine does indeed tend to reduce the size of the coal, these processes are ancillary to the transportation of all raw coal and the manufacturing effect is *de minimus* at best. Consequently, other than this *de minimus* reducing effect, all significant manufacturing processes occur at the tipple and cleaning plant located entirely in West Virginia. The appellant is very careful to point out that it seeks to have what it conceives as "one continuous process" classified as manufacturing and not mining; if the "continuous process" were classified as mining under *W. Va. Code*, 11-13-2a [1971] there would be a much higher tax even if apportioned. There is no question in this appeal that the actual severance of the mineral occurs in Virginia; therefore, the integrated process to which the taxpayer alludes involves both "mining" and

"manufacturing". Where then does mining end and manufacturing begin?

The Supreme Court of Alabama has taken a fairly common sense approach to this issue in *State v. Birmingham Rail & Locomotive Co.*, 259 Ala. 443, 66 So.2d 884 (1953) which was a case involving sales tax assessment where the Alabama statute exempted the gross proceeds of sales of machinery used "in mining." The trial court accepted the taxpayer's argument that rails constituted machines or machinery used in mining and held "that the operation of an underground mine is a unitary process; that the mining, loading, hauling, and carrying of the coal out of the mines to the washers, is a continuous operation; that until the coal goes through the washers, it is not suitable for the market and that the use of tram cars and tram tracks is a necessary part of the continuous operation and that without them the average underground mine could not operate." 259 Ala. at 446, 66 So.2d at 887. The Supreme Court of Alabama affirmed that holding and addressed the whole issue of where "mining" begins and ends as follows:

> "We have no statutory definition of *'mining,'* and there is nothing in the Sales Tax Act to indicate an intention to give to it a technical or restricted meaning. It should be construed according to its plain, ordinary signification. It seems clear to us, as found by the trial court, that it necessarily *implies, not only the cutting of the coal from the seam, but its removal to the surface.* Webster's New International Dictionary, 2nd Ed., defines *"mining,'* as the 'act or business of making or of working mines.' It is defined in Ballentine's Law Dictionary, 2nd Ed., p. 819, as *"the actual cutting or hewing of the mineral in a mine and its removal to the surface.'* In 36 Am. Jur., Mines and Minerals, § 3, p. 282, it is said that 'the ordinary mining operation consists in sinking shafts to the productive level, digging or blasting out the minerals, and elevating them to the surface for processing or distribution.' " (Emphasis supplied) 259 Ala. at 447, 66 So.2d at 888.

Our ruling in this case is entirely consistent with *J. C. Penney Co. Inc. v. Hardesty*, 164 W.Va. 525, 264 S.E.2d 604 (1979) where we considered four separate tax appeals involving State taxation of activities in interstate commerce. In those consolidated cases, Pittsburgh-Des Moines Steel Co. was engaged in the design, engineering, fabrication, and installation of large steel structures in West Virginia. In most instances the steel structures were fabricated in Pennsylvania and delivered by the taxpayer to West Virginia where they were erected on foundations built by the taxpayer through the use of sub-contractors. On some occasions, in fact, the structures were erected on foundations built by others. The taxpayer alleged that the erection of the structures on foundations built by others did not make it liable to a tax measured by its entire gross receipts under the contracting classification of the Business and Occupation Tax because credit should have been given for that portion of the work which was accomplished outside of West Virginia. We said in that case:

> The primary issue on this appeal is whether the State of West Virginia can tax gross receipts on the entire contract price for designing, fabricating, and erecting storage tanks for West Virginia customers when the actual manufacture of the pre-fabricating parts of the tanks is carried on outside of West Virginia and the structure is shipped in pieces for the purpose of being erected in this State. We hold that it can.
> 264 S.E.2d at 610.

Since the facts of the case before us demonstrate that while the appellant has a continuous industrial process, the portion of that process which is carried on in Virginia is mining while the portion carried on in West Virginia is manufacturing. Consequently, the Tax Commissioner was entirely correct in assessing the entire manufacturing tax against the appellant. While the appellant argues that there is a duplication of tax because the State of Virginia levies a corporate income tax upon income attributable to Virginia operations while West Virginia taxes the entire gross receipts from the coal at the manufacturing rate, we fail to find this type of duplicate and discriminatory taxing

prohibited by *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 976 (1977), which we relied on in *J. C. Penny, supra.* As the concurring opinion in *J. C. Penney, supra* pointed out, citing *Henneford v. Silas Mason Co.*, 300 U.S. 577 (1937):

> No state is required under the Commerce Clause to frame its system of taxation such that its burdens and exemptions must match identically those created by other states, but it cannot create within the same individual tax framework a discriminatory scheme.
> 264 S.E.2d, at 624

Accordingly, for the reasons set forth above the judgment of the Circuit Court of McDowell County is affirmed.

*Affirmed.*