GILBERT IMPORTED HARDWOODS, INC.,

A WEST VIRGINIA CORPORATION,

*v.*

RICHARD L. DAILEY, TAX COMMISSIONER

OF THE STATE OF WEST VIRGINIA

(No. 14871)

Decided July 14, 1981.

*Chauncey H. Browning*, Attorney General, *Robert P. Howell*, Assistant Attorney General, for appellant.

*Lawson & Lawson, Williamson, Loy, Shingleton & Caryl* and *Michael E. Caryl* for appellee.

McHUGH, JUSTICE:

This is an appeal by the State Tax Commissioner (hereinafter the "Commissioner" or the "appellant") from a final order of the Circuit Court of Mingo County, entered on August 6, 1979, which affirmed in part and reversed in part the Commissioner's administrative decision of October 29, 1976, which had upheld a Business and Occupation Tax delinquency assessment against appellee, Gilbert Imported Hardwoods, Inc. (hereinafter "Gilbert" or the "appellee"). The issue on this appeal is the proper Business and Occupation Tax rate applicable to the value added to raw coal produced by the appellee by appellee's screening, crushing and washing the raw coal in its tipples.

Gilbert was, during the years here in question, 1970 to 1974, engaged in the mining, processing and selling of coal. Gilbert held leases on two tracts of coal property which were mined by three contract mining firms. After the coal was extracted from the ground by the contract miners, it was delivered to one of two tipples operated by Gilbert. The coal was deposited on the ground by the contract miners at appellee's tipples. Gilbert then processed the coal through its tipples and loaded it onto railroad cars for shipment to customers. Gilbert's processing of the raw coal through its tipples consisted of screening, crushing and washing the raw coal to remove the impurities from the raw coal delivered by the contract miners. Approximately 30% of the raw coal delivered to Gilbert's tipples was removed from the ultimate product by this process and, consequently, the value of the coal sold by Gilbert to its customers was substantially increased.

For the years 1970 to 1974 the appellee reported its activity as manufacturing, compounding or preparing for sale an article, substance or commodity for the purposes of the Business and Occupation Tax. *See W.Va. Code,* 11-13-2b [1971]. On January 8, 1976, the Commissioner, after a field audit of Gilbert, assessed a deficiency in Business and Occupation Taxes against the appellee in the amount of $650,766.74. The liability arose because Gilbert's activity was reclassified by the Commissioner from manufacturing, compounding or preparing for sale, profit, or commercial use, an article, substance or commodity, to severing, extracting, reducing to possession and producing for sale a natural resource. *See W.Va. Code,* 11-13-2a [1971]. The amount of the deficiency assessment was arrived at by taxing, at the rate set by *W.Va. Code,* 11-13-2a [1971], the value of the coal after processing through appellee's tipples as determined by the ultimate sales price.

Gilbert filed a petition for a reassessment with the Commissioner on January 28, 1976. The petition challenged, among other things, the Commissioner's reclassification of Gilbert and the assessment of penalties. An administrative hearing on Gilbert's petition for reassessment was held on May 25, 1976. The Commissioner thereafter rendered an administrative decision which upheld the reclassification of Gilbert but waived the penalties previously assessed due to Gilbert's reliance on a prior state audit in reporting its activity as manufacturing, compounding or preparing for sale, profit, or commercial use, an article, substance or commodity. The delinquency assessment was, therefore, reduced to $566,109.73.

Gilbert appealed the Commissioner's administrative decision to the Circuit Court of Mingo County. Gilbert assigned as error the Commissioner's ruling that it was engaged in the activity of severing, extracting, reducing to possession and producing for sale a natural resource for the purpose of the Business and Occupation Tax. Gilbert also assigned as error the Commissioner's ruling that the tax rate set by *W.Va. Code,* 11-13-2a [1971], was to be applied to the value added to the raw coal it produced by the exercise of a separate privilege of manufacturing, compounding or

preparing for sale, profit, or commercial use, an article, substance or commodity; specifically, Gilbert's processing of the raw coal through its tipples by screening, crushing and washing it.

The Circuit Court of Mingo County affirmed the Commissioner's ruling that Gilbert was engaged in the privilege of extracting, severing, reducing to possession and producing for sale a natural resource for the purposes of the Business and Occupation Tax. That ruling is not challenged on this appeal. The circuit court also ruled, however, that the Commissioner had erred in applying the tax rate set by *W.Va. Code*, 11-13-2a [1971], to the value added to the raw coal by the processing of that coal in appellee's tipples because Gilbert's activities in this regard were separable. The raw coal mined by Gilbert's contract miners was held to be taxable to Gilbert at the tax rate provided by *W.Va. Code*, 11-13-2a [1971], assessed on the value of the raw coal at the time it was delivered to Gilbert's tipple as determined by the valuation method provided by the seventh paragraph of *W.Va. Code*, 11-13-2 [1971]. The value added to the coal by the appellee's processing of the raw coal through its tipples was, however, held to the tax able at the rate provided by *W.Va. Code*, 11-13-2b [1971], with the value added by such processing to be determined by open market sales as provided in section 2b. Specifically, the Circuit Court of Mingo County held that: (1) Gilbert's processing through its tipples of raw coal that it had produced constituted the exercise of the business privilege of manufacturing, compounding or preparing for sale, profit or commercial use, articles, substances or commodities, as contemplated by *W.Va. Code*, 11-13-2b; (2) Gilbert's processing through its tipples of raw coal that it had produced constituted the using or consuming of raw coal by Gilbert in its exercise of the privilege of engaging in the business of preparing the coal for sale, profit or commerical use within the meaning of the phrase "using or consuming" contained in the seventh paragraph of *W.Va. Code*, 11-13-2, when read *in pari materia* with *W.Va. Code*, 11-13-2a and 2b; and (3) Gilbert's production of coal ended when the extracted coal was dumped on the ground at the tipples by

the contract miners and that the processing of the raw coal through tipples was not part of the production process but constituted the using or consuming of natural resources in a separate business activity as contemplated by the seventh paragraph of *W.Va. Code*, 11-13-2, when read *in pari materia* with *W.Va. Code*, 11-13-2a and 2b. As a result of these rulings the Circuit Court of Mingo County reduced the deficiency assessment against Gilbert to $370,420.82. From that order the Commissioner filed a petition for an appeal with this Court.

The Commissioner, on this appeal, makes nine assignments of error, but only one issue is presented for decision by those assignments. That issue is whether the value added by the processing raw coal through tipples by the producer of the raw coal should be taxed at the rate set by *W.Va. Code*, 11-13-2a [1971], applicable to the severing, extracting, reducing to possession and producing for sale a natural resource, or at the rate set by *W.Va. Code*, 11-13-2b [1971], applicable to the manufacturing, compounding or preparing for sale, profit or commercial use, an article, substance or commodity.

Article 13 of Chapter 11 of the *Code* creates a comprehensive plan for the taxation of the privilege of operating a business or engaging in an occupation in this State. Section 2 of Article 13, Chapter 11, imposes the tax. *Owens-Illinois Glass Co. v. Battle*, 151 W.Va. 655, 154 S.E.2d 854 (1967). Sections 2a through 2k of Article 13, Chapter 11, set the rate of tax in regard to the specific business activity for the purpose of determining the value subject to taxation.[1]

In order for the method of valuation contemplated by *W.Va. Code*, 11-13-2a and 2b, to work there must be a sale of the natural resource or article, substance or commodity. A "sale" is defined, in *W.Va. Code*, 11-13-1 [1972], as "any transfer of the ownership or title to property, whether for money or in exchange for other property." The method of valuation used in these two sections, however, poses a

---

[1] Sections 2l and 2m were added by amendment in 1978 and 1980. *See* 1980 *W.Va. Acts*, c. 123; 1978 *W.Va. Acts*, c. 96.

problem where a market sale does not occur. The Legislature, however, made provision for this situation by the phrase "except as otherwise provided" in both Sections 2a and 2b and by providing otherwise in the seventh paragraph of Section 2. *W.Va. Code*, 11-13-2a [1971] read, in pertinent part:

> Upon every person exercising the privilege of engaging or continuing within this State in the business of severing, extracting, reducing to possession and producing for sale, profit or commercial use any natural resources products, the amount of such tax to be equal to the value of the articles produced as shown by the gross proceeds derived from the sale thereof by the producer, *except as otherwise provided. . . .*

(Emphasis added).[2] *W.Va. Code*, 11-13-2b [1971], read, in pertinent part:

> Upon every person engaging or continuing within this State in the business of manufacturing, compounding or preparing for sale, profit or commercial use, either directly or through the activity of others in whole or part, any article or articles, substance or substances, commodity or commodities . . . the amount of the tax to be equal to the value of the article, substance, commodity . . . manufactured, compounded or prepared for sale, as shown by the gross proceeds derived from the sale thereof by the manufacturer or person compounding or preparing the same, except *as otherwise provided. . . .*

---

[2] *W.Va. Code*, 11-13-2a, was amended in 1980 to cover the situation presented by this appeal. *See* 1980 *W.Va. Acts*, c. 123. The amendment, which was effective on April 1, 1980, added the following language to *W.Va. Code*, 11-13-2a:

The value of coal mined and produced in this State . . . shall include . . . those values arising from the ordinary processing and preparing of such coal for sale or commercial use, where such processing and preparing are done by the producer of the coal. Ordinary processing and preparing of coal activities by the producer thereof are considered an integral part of the production privilege and include crushing, washing, cleaning, drying, sorting, sizing, blending, loading for shipment and the like applied in the ordinary mining of such products.

(Emphasis added). The seventh paragraph of *W.Va. Code,* 11-13-2 [1971], read:

> A person exercising privileges, taxable under the other sections of this article, producing coal, oil, natural gas, minerals, timber, or other natural resource products the production of which is taxable under section 2a (§ 11-13-2a) and using or consuming the same in his business or transferring or delivering the same as any royalty payment, in kind, or the like, shall be deemed to be engaged in the business of mining and producing coal, oil, natural gas, minerals, timber or other natural resource products on account of the production of the business showing the gross proceeds or the equivalent in accordance with uniform and equitable rules for determining the value upon which such privilege tax shall be levied, corresponding as nearly as possible to the gross proceeds from the sale of similar products of like quality or character by other taxpayers, which rules the tax commissioner shall proscribe.[3]

This Court, in *Owens-Illinois Glass Co. v. Battle, supra,* had occasion to consider the situation contemplated by the Legislature in enacting Section 2a and the seventh paragraph of Section 2. The taxpayer in that case was involved in the production of natural gas and in a manufacturing activity. Most of the natural gas produced by the taxpayer was consumed in its manufacturing activity. The natural gas produced by the taxpayer which was not used in its manufacturing activity was used by the taxpayer in the production of the gas. Consequently, there was not a market transaction by which to fix the value of the natural gas subject to the tax rate of *W.Va. Code,* 11-13-2a.

---

[3] In accordance with the seventh paragraph of *W.Va. Code,* 11-13-2 [1971], the Commissioner has promulgated rules for determining the value of a natural resource product or article, substance, or commodity, which is used or consumed by the person who produces such item. *See W.Va. Ad. Reg.* (CCH) 76-504, 1.2 Reg. BOT A, 1, d and A, 2, d (1974).

The taxpayer paid the Business and Occupation Tax on all the natural gas it produced at the rate set by section 2a. The case arose when the State Tax Commissioner refused to refund that part of the tax paid which was attributable to the portion of the natural gas used by the taxpayer in the production of the natural gas. The question in that case was whether the natural gas used by the taxpayer for further production was taxable at all. Reading Section 2a *in pari materia* with the seventh paragraph of Section 2, this Court held that natural gas produced and consumed by the taxpayer was taxable regardless of whether it was used for further production or in a separate manufacturing activity. *Owens-Illinois Glass Co. v. Battle, supra,* at Syl. pt. 5. It is clear from that case, as well as from the BOT regulations cited in footnote 3, *supra,* that the purpose of the seventh paragraph of Section 2 is to provide for an alternate method of valuation in those cases which would normally be covered by Section 2a or 2b but for the fact that the producer did not sell the product but rather consumed it in further activity. The Court said, at 662:

> Inasmuch as natural resource products used or consumed, for instance, in the business of manufacturing are not sold by the producer ... the legislature, by the seventh paragraph of Section 2, clearly undertook to provide for taxation of such natural resource products used and consumed by the producer in another business conducted by him. Since such products are used and consumed in another business of the producer and, therefore, not sold by the producer there was a need for a legislative determination of the value of such products for the purpose of computing the tax.

Hence, if the Circuit Court of Mingo County was correct in its holding that Gilbert's processing of the raw coal through its tipples was a separate business activity properly classified under Section 2b, then the court was also correct in applying the seventh paragraph of Section 2 in order to assess the value of the coal subject to the tax rate set by Section 2a.

Gilbert's operation of integrated business is not questioned on this appeal. It was involved in the coal business

from the initial mining of the raw coal to its sale to an ultimate consumer in a refined state. The issue here is whether the processing of the raw coal through Gilbert's tipples was part of the "business of severing, extracting, reducing to possession and producing for sale, profit or commercial use any natural resource product," *W.Va. Code*, 11-13-2a [1971], or a separate "business of manufacturing, compounding or preparing for sale, profit or commerical use ... any article or articles, substance or substances, commodity or commodities," *W.Va. Code*, 11-13-2b [1971].

If processing of coal through tipples is part of the process of "severing, extracting, reducing to possession and producing for sale ... any natural resource product" then the Circuit Court of Mingo County erred in not applying the tax rate set in *W.Va. Code*, 11-13-2a [1971] to the full value of the coal as determined by the sale of the coal after such processing. On the other hand, if processing of coal through tipples is a separate business of "manufacturing, compounding or preparing for sale ... an article ... or substance... or commodity" then the Circuit Court of Mingo County was correct in using the seventh paragraph of Section 2 to assess the value of the coal subject to the rate of *W.Va. Code*, 11-13-2a [1971], and in applying the rate set by *W.Va. Code*, 11-13-2b [1971], to the value added to the coal by the processing of the coal through tipples.

The fact that Gilbert is an integrated business is not controlling here. It is well settled that an integrated business is divisible into its separate parts for the purpose of applying different Business and Occupation Tax rates to its component parts. *See Owens-Illinois Glass Co. v. Battle*, *supra*; *J. D. Moore, Inc. v. Hardesty*, 147 W.Va. 611, 129 S.E.2d 722 (1963); *Soto v. Hope Natural Gas Co.*, 142 W.Va. 373, 95 S.E.2d 769 (1956). The question is whether this principle was properly applied to Gilbert's activities here under review. We think that it was properly applied.

This Court, in *Soto v. Hope Natural Gas Co.*, *supra*, had occasion to consider the language of *W.Va. Code*, 11-13-2a as it applied to the production of natural gas. In that case the taxpayer challenged a regulation promulgated by the Commissioner which would have valued natural gas

produced and sold inside the State by the price paid by the ultimate consumer and all other gas produced at the well-head price. In striking down the regulation, it was held, at Syl. pt. 2, that: "The measure of the tax upon the privilege of producing for sale, profit, or commercial use, any natural resource product imposed by (*W.Va. Code,* 11-13-2a) is the value of the article produced at the point where production ends." This Court further held that the production of natural gas ends when it is brought from the ground at the well. *Id.* at 386.

This Court also recently addressed a similar question in relation to coal production in *Bishop Coal Co. v. Dailey,* 276 S.E.2d 220 (W.Va. 1981). In that case the taxpayer operated a coal mine which severed coal in Virginia. The coal was then transported in underground tunnels to a cleaning plant and tipple in West Virginia. We said, at 222: "Since the facts of the case before us demonstrate that while the appellant has a continuous industrial process, the portion of that process which is carried on in Virginia is mining while the portion carried on in West Virginia is manufacturing." Production of coal was said to end when the coal was reduced to possession on the surface. We held:

> Where a taxpayer operates an underground coal mine which severs coal in the State of Virginia and transports the coal through tunnels located in both Virginia and West Virginia to a cleaning plant and tipple in West Virginia, the taxpayer is chargeable with the entire business and occupation tax in the manufacturing category as measured by the total gross receipts from the sale of the coal *since all of the manufacturing involved in preparing the coal for market occurs in West Virginia.*

Syl. 276 S.E.2d 220 (Emphasis added).

We think that, under these cases, the language of *W.Va. Code,* 11-13-2a [1971], and *W.Va. Code,* 11-13-2b [1971], is clear and unambiguous. The production of coal, for the purposes of *W.Va. Code,* 11-13-2a [1971] ends when the coal is reduced to possession on the surface. The screening, crushing and washing of raw coal in tipples to remove the impurities from the coal so processed is an activity properly

classified as manufacturing, compounding, or preparing for sale, profit or commercial use an article, substance or commodity and, therefore, the value added to coal by such processing is properly subject to the tax rate set by *W.Va. Code,* 11-13-2b [1971].

The statutory provisions in this case are clear and unambiguous. "When statutory provisions, properly read and considered *in pari materia,* are clear and unambiguous, there is no basis for application of rules of statutory construction, but courts must apply such statutory provisions according to the legislative intent plainly expressed therein." Syl. pt. 2, *Owens-Illinois Glass Co. v. Battle, supra.*

Those provisions were properly applied by the circuit court. We, therefore, affirm the judgment of the Circuit Court of Mingo County, entered by an order dated August 6, 1979, in this case.

*Affirmed.*