# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Dale W. Steager, as**
**State Tax Commissioner of West Virginia,**
**Respondent Below, Petitioner**

**FILED**

**May 17, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)     No. 16-0441** (Mercer County 15-C-326)

**James Dawson and**
**Elaine Dawson,**
**Petitioners Below, Respondents**

## MEMORANDUM DECISION

The Tax Commissioner for the State of West Virginia, petitioner Dale W. Steager,[1] by counsel Katherine Schultz and L. Wayne Williams, appeals a March 31, 2016, order of the Circuit Court of Mercer County. In that order, the circuit court held that a tax exemption available only to beneficiaries of certain state retirement plans unlawfully discriminated against certain federal retirees. The taxpayer-respondents, James and Elaine Dawson, by counsel Michael W. Carey and David R. Pogue, filed a response in favor of the circuit court's order. The Tax Commissioner filed a reply.

The Court has considered the parties' briefs and oral arguments, as well as the record on appeal. Upon consideration of the standard of review and existing precedent, the Court finds no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. A memorandum decision reversing the circuit court's order is therefore appropriate under Rule 21 of the Rules of Appellate Procedure.

Since 1939, Congress has permitted states to tax the income and the retirement benefits of former United States government employees. However, Congress allows state taxes upon federal retirement benefits only "if the taxation does not discriminate . . . because of the source of the pay or compensation." 4 U.S.C. § 111 [1998].

West Virginia imposes taxes upon the government-provided retirement income of most local, state and federal employees who reside in this state. West Virginia taxes the income of retired local and state employees received from the West Virginia Public

---

[1] Mr. Steager replaced Mark W. Matkovich as Tax Commissioner in January 2017.

1

Employees Retirement System ("PERS") and the State Teachers Retirement System ("TRS"); it also taxes the income of retired federal employees received from any federal or military retirement system. W.Va. Code § 11-21-12(c)(5) [2006]. However, West Virginia law permits the recipients of PERS, TRS, or a general federal retirement to exempt up to $2,000 of retirement benefits from their taxable income. *Id.*[2] The law permits recipients of military retirement benefits to exempt up to $20,000. W.Va. Code § 11-21-12(c)(7)(B). Furthermore, any taxpayer aged 65 or older may exempt up to $8,000 from their taxable income, regardless of the source of that income. W.Va. Code § 11-21-12(c)(8).

At issue in this case is a unique tax exemption contained in West Virginia Code § 11-21-12(c)(6) ("Section 12(c)(6)"). Section 12(c)(6) allows the recipients of four small West Virginia retirement plans to exempt from their taxable state income all the benefits received from those plans. According to the Tax Commissioner, the recipients comprise approximately two percent of all state government retirees. The four retirement plans are the Municipal Police Officer and Firefighter Retirement System ("MPFRS"); the Deputy Sheriff Retirement System ("DSRS"); the State Police Death, Disability and Retirement Fund ("Trooper Plan A"); and the West Virginia State Police Retirement System ("Trooper Plan B").[3]

The taxpayer in this case is James Dawson, who worked most of his career as a deputy U.S. Marshal before being presidentially appointed U.S. Marshal for the Southern District of West Virginia. Mr. Dawson retired from the U.S. Marshals Service on March 31, 2008. During his employment, Mr. Dawson was enrolled exclusively in the Federal Employee Retirement System ("FERS"), and he now receives benefits from FERS. The Tax Commissioner agrees that Mr. Dawson is entitled to exempt at least $2,000 of FERS

---

[2] W.Va. Code § 11-21-12(c)(5) provides, in pertinent part, that a taxpayer may exempt from adjusted gross income "the first two thousand dollars of benefits received under any federal retirement system to which Title 4 U.S.C. § 111 applies[.]"

[3] W.Va. Code § 11-21-12(c)(6) provides:

(c) *Modifications reducing federal adjusted gross income.* -- There shall be subtracted from federal adjusted gross income to the extent included therein: . . .

(6) Retirement income received in the form of pensions and annuities after the thirty-first day of December, one thousand nine hundred seventy-nine, under any West Virginia police, West Virginia Firemen's Retirement System or the West Virginia State Police Death, Disability and Retirement Fund, the West Virginia State Police Retirement System or the West Virginia Deputy Sheriff Retirement System, including any survivorship annuities derived from any of these programs, to the extent includable in gross income for federal income tax purposes[.]

income from his state taxable income; when he reaches the age of 65, he may exempt up to $8,000. *See* W.Va. Code §§ 11-21-12(c)(5) and -12(c)(8).

For tax years 2010 and 2011, Mr. Dawson and his wife Elaine filed amended tax returns claiming an adjustment exempting Mr. Dawson's FERS retirement income from state income tax pursuant to Section 12(c)(6). The Tax Commissioner refused to allow the Dawsons to claim the exemption.

The Dawsons appealed, and in a hearing before the Office of Tax Appeals asserted that there is no significant difference between state, local, and federal law enforcement officers. Accordingly, the Dawsons contended that the Tax Commissioner's preferential treatment of the retirement income of some (but not all) state and local law enforcement officers pursuant to Section 12(c)(6) was, in fact, discrimination against federal law enforcement officers prohibited by 4 U.S.C. § 111. The Tax Commissioner countered that, under the totality of the circumstances, the Section 12(c)(6) exemption was not designed to discriminate against federal retirees; rather, the intent of the exemption is to give a benefit to a very narrow class of former state and local employees. The Office of Tax Appeals rejected the Dawsons' argument and affirmed the Tax Commissioner's denial of the Section 12(c)(6) exemption.

The Dawsons appealed to the Circuit Court of Mercer County, and the parties repeated their arguments. In an order dated March 31, 2016, the circuit court reversed the decision of the Office of Tax Appeals. The circuit court concluded that the Tax Commissioner's denial of the Section 12(c)(6) exemption to the Dawsons violated 4 U.S.C. § 111. The Tax Commissioner now appeals the circuit court's order.

The issues raised by the parties involve the interpretation of Section 12(c)(6), and an assessment of whether it conflicts with 4 U.S.C. § 111. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). *See also*, Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't of W.Va.*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). We review the factual findings and conclusions of the Tax Commissioner under a clearly wrong and abuse of discretion standard. Syllabus Point 5, *Frymier-Halloran v. Paige*, 193 W.Va. 687, 458 S.E.2d 780 (1995). "The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syllabus Point 3, *In re Queen*, 196 W.Va. 442, 473 S.E.2d 483 (1996).

The Tax Commissioner asserts that the circuit court erred in holding that Section 12(c)(6) was an intentionally discriminatory tax against federal marshals. The Tax

3

Commissioner argues that the circuit court failed to take into account the fact that there is no evidence in the record to suggest that Section 12(c)(6) was intended to discriminate against employees or former employees of the federal government. Viewing West Virginia's tax scheme in totality, the Tax Commissioner contends that the record shows there was no calculated scheme or blanket plan to discriminate against retired federal marshals based on the source of their income. As we explain below, we agree and reverse the circuit court's holding.

In *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803 (1989), the United States Supreme Court analyzed 4 U.S.C. § 111 and discussed its roots in the doctrine of intergovernmental tax immunity. The doctrine traces back to *McCullough v. Maryland*, 17 U.S. 316 (1819), the seminal case where the Supreme Court recognized that Congress was constitutionally empowered to create a "Bank of the United States," and held that the state of Maryland could not impose a discriminatory tax on the Bank. "Chief Justice Marshall's opinion for the Court reasoned that the Bank was an instrumentality of the Federal Government used to carry into effect the Government's delegated powers, and taxation by the State would unconstitutionally interfere with the exercise of those powers." *Davis*, 489 U.S. at 810.[4]

"[I]ntergovernmental tax immunity is based on the need to protect each sovereign's governmental operations from undue interference by the other." *Id.* at 814. Prior to 1939, the "salaries of most government employees, both state and federal, generally were thought to be exempt from taxation by another sovereign under the doctrine of intergovernmental tax immunity." *Id.* "This rule 'was based on the rationale that any tax on income a party received under a contract with the government was a tax on the contract and thus a tax "on" the government because it burdened the government's power to enter into the contract.'" *Id.* at 811 (quoting *South Carolina v. Baker,* 485 U.S. 505, 518 (1988)). However, Congress enacted the "Public Salary Tax Act of 1939" (of which 4 U.S.C. § 111 is a part) "to impose federal income tax on the salaries of all state and local government employees," *Davis*, 489 U.S. at 810, and also to expressly permit states to tax the salaries of federal employees. *Id.* at 811.[5]

---

[4] The intergovernmental tax immunity doctrine is founded upon the Supremacy Clause (Article VI) of the United States Constitution which provides, in part: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land[.]"

[5] Congress adopted the Public Salary Tax Act contemporaneously with the Supreme Court's decision in *Graves v. New York ex rel. O'Keefe*, 306 U.S. 466 (1939), which held that a state could levy non-discriminatory income taxes upon a federal employee. *Davis*, 489 U.S. at 811-812.

The Supreme Court found, however, that Congress "did not waive all aspects of intergovernmental tax immunity[.]" *Id.* at 812. The final clause of 4 U.S.C. § 111 provides, "The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States . . . if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation." This clause prohibits "state taxes that discriminate against federal employees on the basis of the source of their compensation." *Davis*, 489 U.S. at 811. The Supreme Court concluded that this clause embodies "the modern constitutional doctrine of intergovernmental tax immunity." *Id.* at 813. Under the doctrine, if a heavier tax burden is imposed upon a class of individuals who deal with the federal government than is imposed upon those individuals who deal with state government, then "the relevant inquiry is whether the inconsistent tax treatment is directly related to, and justified by, 'significant differences between the two classes.'" *Id.* at 815-816 (quoting *Phillips Chemical Co. v. Dumas Independent School Dist.*, 361 U.S. 376, 383 (1960)).

In *Davis*, the Supreme Court considered a Michigan state tax scheme under which "the retirement benefits of retired state employees are exempt from state taxation while the benefits received by retired federal employees are not." *Davis*, 489 U.S. at 806. The Supreme Court specifically identified the state scheme as a "blanket exemption[.]" *Id.* at 817. The Supreme Court had "no difficulty" concluding that federal retirement benefits are a form of compensation protected from discrimination under 4 U.S.C. § 111. *Id.* at 808-809. More importantly, the Supreme Court concluded that the blanket state tax exemption was precluded by 4 U.S.C. § 111 because it "violates principles of intergovernmental tax immunity by favoring retired state and local government employees over retired federal employees." *Id.* at 817.

Several years later, this Court was presented with an opportunity to apply *Davis* and 4 U.S.C. § 111 to the exemption contained in Section 12(c)(6). In *Brown v. Mierke*, 191 W.Va. 120, 443 S.E.2d 462 (1994), the taxpayers were retirees from the armed forces of the United States who received military pensions.[6] As recipients of a military pension, the Tax Commissioner agreed that the taxpayers were entitled to exempt at least $2,000 of pension income from their state taxable income; if they were over age 65, they could exempt up to $8,000. 191 W.Va. at 121, 443 S.E.2d at 463 (citing W.Va. Code §§ 11-21-12(c)(5) and -12(c)(9)).[7] The taxpayers, however, claimed they were entitled to exempt *all* of their pension income from state taxation under Section 12(c)(6). The taxpayers argued, "West Virginia's exemption of certain firefighters' and police officers' retirement

---

[6] In *Barker v. Kansas*, 503 U.S. 594 (1992), the Supreme Court held that federal military retirement benefits are protected from discrimination under 4 U.S.C. § 111.

[7] Subsequent to our decision in *Brown*, and effective after the 2002 tax year, the recipients of military retirement income may exempt up to $20,000 from their taxable income. W.Va. Code § 11-21-12(c)(7)(B).

5

benefits renders the tax of military pensions prohibited and discriminatory." 191 W.Va. at 123, 443 S.E.2d at 465.

This Court rejected the taxpayers' argument in *Brown*. We noted that in cases where the Supreme Court had found a state tax exemption improperly discriminated against federal retirees under 4 U.S.C. § 111 – such as the Michigan exemption for all state retirees in *Davis* – the state had afforded a blanket exemption to *all* state retirees. Our analysis of Section 12(c)(6) turned on the fact that West Virginia's tax law "exempts a *narrow* class of state employees from state taxation while taxing federal employees." 191 W.Va. at 124, 443 S.E.2d at 466 (emphasis added).

Applying *Davis*, we recognized in *Brown* that "the test of whether a state tax scheme violates 4 U.S.C. § 111 is whether there exists substantial differences between the two classes that justify the discrimination." *Id.* We concluded, however, that West Virginia's limited, multi-tiered series of tax exemptions differed from the "schemes invalidated by the Supreme Court in that there is no intent in the West Virginia scheme to discriminate *against* federal retirees; rather, the intent is to give a benefit to a very narrow class of former state and local employees." *Id.* Summarizing the law, we found in Syllabus Point 2:

> Challenges to a state tax scheme under 4 U.S.C. § 111 can succeed only when one purpose of the challenged scheme is shown to discriminate against the officer or employee because of the *source* of pay or compensation. In determining whether such discrimination exists, a court will look to the totality of the circumstances to ascertain whether the intent of the scheme is to discriminate against employees or former employees of the federal government.

191 W.Va. at 121, 443 S.E.2d at 463.

The *Brown* Court upheld Section 12(c)(6) and found it did not violate 4 U.S.C. § 111 and the doctrine of intergovernmental tax immunity. The ruling turned on the totality of the circumstances. First, the record in *Brown* indicated that (as of 1991) 1,624 retired police and firefighters were exempt from taxation by Section 12(c)(6) – "about four percent of all state and local retirees in West Virginia." 191 W.Va. at 121, 443 S.E.2d at 463. Furthermore, an analysis of the entire scheme of tax exemptions showed no intent to discriminate against former employees of the federal government:

> [T]hree facts conclusively demonstrate that no calculated scheme or plan exists to discriminate against retired military personnel based on the source of their income: (1) retired military personnel are treated *more* favorably than West Virginians who have retired from civilian occupations; (2) retired military personnel are treated equally with all persons retired from the West Virginia Public Employees Retirement System and the West

6

Virginia Teachers Retirement System; and (3) along with state public employees and teachers, military retirees are treated *substantially more favorably* than persons retired from the West Virginia Judicial Retirement System.

191 W.Va. at 125, 443 S.E.2d at 467. As further evidence of a lack of discriminatory intent, the Court noted:

That the judges of this Court, statewide elected officials with rather substantial personal political followings and not a few friends in the West Virginia Legislature, are taxed at a substantially *higher* rate than retired members of the Armed Forces of the United States, and both military retirees and the majority of retired state employees are taxed at *lower* rates than West Virginians retired from private sector occupations renders it extraordinarily difficult to infer that *any* of the pernicious dynamics that either the ancient doctrine of intergovernmental tax immunity or 4 U.S.C. § 111 are designed to remedy is implicated.

191 W.Va. at 125-26, 443 S.E.2d at 467-68.

We now turn to the circumstances of this case. Section 12(c)(6) exempts from state taxation the retirement income of many state and local firefighters and law enforcement officers, but not federal marshals. The taxpayer, Mr. Dawson, asserts that there are no significant differences between the powers and duties of state and local law enforcement officers and those of federal marshals. Mr. Dawson contends that this inconsistent tax treatment is proscribed by 4 U.S.C. § 111 because, as the Supreme Court said in *Davis*, it is not "directly related to, and justified by, significant differences between the two classes." 489 U.S. at 815-816.

The Tax Commissioner counters that the exemption at issue in *Davis* was a global or blanket exemption: the *Davis* tax exemption applied to all state retirees but no federal retirees. In this case, the tax exemption in Section 12(c)(6) applies to a narrow but diverse class of state retirees. Of 53,184 total state government retirees in 2010, less than two percent are eligible for the exemption. For example, the Tax Commissioner showed that in 2010, only 260 retired deputy sheriffs (less than 0.5% of all state retirees) received a pension from the DSRS and were entitled to use the Section 12(c)(6) exemption. An unknown number of other deputy sheriffs, all of whom started working before the DSRS was established in 1998, cannot use the Section 12(c)(6) exemption because they are among the 22,040 retirees receiving a pension from PERS. The Tax Commissioner also showed some state retirement plans provide cost of living increases (like Trooper Plan A or Plan B) while some do not (like MPFRS or DSRS). Some state retirees have contributed to and therefore receive social security (DPRS) while some do not (Trooper Plans A and B). Further, the exemption in Section 12(c)(6) applies to firefighters, but not

7

to emergency medical technicians or paramedics.[8] The Section 12(c)(6) exemption also does not apply to law enforcement officers employed by the Department of Natural Resources[9] or by the Capitol Police.[10]

It is well settled that tax exemptions are strictly construed against the taxpayer. Where a person claims an exemption from a law imposing a tax, the law is strictly construed against the person claiming the exemption. Syllabus Point 2, *State ex rel. Lambert v. Carman*, 145 W.Va. 635, 116 S.E.2d 265 (1960) ("Where a person claims an exemption from a law imposing a license or tax, such law is strictly construed against the person claiming the exemption."); Syllabus Point 3, *Owens-Illinois Glass Co. v. Battle*, 151 W.Va. 655, 154 S.E.2d 854 (1967) ("Where a person claims an exemption from a law imposing a tax, such law must be construed strictly against the person claiming the exemption."). Under Syllabus Point 2 of *Brown*, the Dawsons were required to establish that the tax scheme established by Section 12(c)(6) discriminates against a federal retiree because of the source of his or her income. However, in determining whether such discrimination exists, this Court "will look to the totality of the circumstances to ascertain whether the intent of the scheme is to discriminate against employees or former employees of the federal government." *Id.*

In light of the totality of the circumstances, and the totality of the structure of West Virginia's tax and retirement scheme, Section 12(c)(6) did not discriminate against Mr. Dawson. The intent of the exemption contained in Section 12(c)(6) was to give a benefit to a narrow class of state retirees. The record conclusively demonstrates that Mr. Dawson received more favorable tax treatment than state civilian retirees, whose status as retirees affords them no special exemption. Unlike state civilian retirees, federal retirees like Mr. Dawson are allowed to exempt $2,000 from their taxable income. W.Va. Code § 11-21-12(c)(5). Mr. Dawson also received more favorable tax treatment than retired state justices and circuit judges, who likewise are afforded no exemption for their state retirement income.[11] Most importantly, Mr. Dawson received the same tax treatment as

---

[8] Individuals who provide emergency medical services may receive retirement benefits from PERS or, if employed after 2008, the Emergency Medical Services Retirement System ("EMSRS"). *See* W.Va. Code § 16-5V-1 *et seq.*

[9] *See* W.Va. Code § 20-7-1 *et seq.* (establishing natural resources police officers and setting duties and powers).

[10] The Capitol Police is formally known as the "Division of Protective Services." *See* W.Va. Code § 15-5D-2 [2002] ("The state facilities protection division within the department of military affairs and public safety shall hereafter be designated the division of protective services. The purpose of the division is to provide safety and security at the capitol complex and other state facilities.").

[11] Most retired circuit judges and supreme court justices receive benefits from the Judges' Retirement System and cannot use the exemption applicable to recipients of

the former state employees who make up as the vast majority of all state retirees: recipients of benefits from PERS and the Teachers Retirement System. Additionally only some law enforcement officers (such as deputy sheriffs receiving benefits from DSRS) are permitted to rely upon the Section 12(c)(6) exemption, while others (such as deputy sheriffs receiving benefits from PERS) are not.

When this Court first upheld Section 12(c)(6) in *Brown* in 1994, the number of retirees who qualified for the exemption comprised four-percent of all state-pension recipients. In the years at issue in this case, the number who qualify for the exemption has diminished to two percent of all state-pension recipients. Similar to what we found in *Brown*, the total structure of West Virginia's system for taxing personal income does not discriminate against retired members of the United States Marshals Service in violation of 4 U.S.C. § 111. Section 12(c)(6) gives a benefit to a very narrow class of former state and local employees, and that benefit was not intended to discriminate against former federal marshals.

The circuit court erred in finding that Section 12(c)(6) was contrary to 4 U.S.C. § 111. Accordingly, the circuit court's March 31, 2016, order must be reversed.

Reversed and remanded.

**ISSUED:** May 17, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

PERS benefits in W.Va. Code 11-21-12(c)(5). However, family court judges, as well as a handful of former circuit judges and justices, are members of PERS and *can* use the exemption. *See* W.Va. Code § 51-9-5 [1987] (permitting circuit judges and justices to elect PERS coverage); W.Va. Code § 51-2A-6(g) [2011] (providing family court judges are not eligible to participate in the Judges' Retirement System).

9